# Third District Court of Appeal

## State of Florida

Opinion filed February 20, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-10
Lower Tribunal No. 09-27608
_____


**Juan Allende,**
Appellant,

vs.

**Felicita Veloz,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Law Offices of Karim Batista, P.A., and Karim Batista, for appellant.

Felicita Veloz, in proper person.


Before SALTER, LINDSEY, and HENDON, JJ.

HENDON, J.

Juan O. Allende ("Father") appeals from an order, which among other things, denies his emergency motion for physical custody of his minor child ("Child") and to suspend the time-sharing of the Child's mother, Felicita Veloz ("Mother"). For the reasons that follow, we affirm.

The Mother and the Father divorced in 2010. Their final judgment of dissolution of marriage incorporated a mediated settlement agreement, which provides, in part, that they have shared parental responsibility pursuant to section 61.13 of the Florida Statutes; sets forth a time-sharing plan; and provides that "[a]ny relocation of the Child is subject to and must be sought in compliance with section 61.13001, Florida Statutes."

In November 2015, the Mother relocated to Orlando with the Child after obtaining the Father's oral consent. This oral agreement, however, did not comply with section 61.13001, Florida Statutes (2015), which requires the relocating parent to: (1) obtain a written and signed agreement from the non-relocating parent consenting to the relocation, and thereafter, seek a court order ratifying the agreement, § 61.13001(2); or (2) file a petition to relocate containing specific information, which must be served on the non-relocating parent, and thereafter, obtain permission to relocate from the court, § 61.13001(3).

In November 2017, while the Child was in the Father's care for the Thanksgiving holiday pursuant to the parties' time-sharing plan, the Father filed an

2

emergency motion, through counsel, alleging that based on his own observations and/or information provided to him by the Child, the Child was malnourished, did not maintain proper hygiene while in the Mother's care, and was having nightmares ("emergency motion"). In the emergency motion, the Father requested that the trial court enter an order that: (1) grants the Father physical custody of the Child; (2) suspends the Mother's time-sharing; (3) appoints a guardian ad litem to investigate the allegations in the emergency motion; and (4) refers the child to Family Court Services for individual therapy.

On November 26, 2017, the Father failed to return the Child to the Mother as scheduled. The following day, the Mother filed a verified emergency motion seeking an order to pick up the Child ("emergency pick-up motion").

On November 29, 2017, the trial court conducted a hearing on the Father's emergency motion and the Mother's emergency pick-up motion. Following the arguments of counsels, the trial court: (1) denied the Father's motion for physical custody of the Child; (2) denied the Father's motion to suspend the Mother's time-sharing, but modified the parties' time-sharing plan to address the transportation of the Child; (3) granted the Father's motion to appoint a guardian ad litem for the purpose of investigating the allegations and making appropriate recommendations to the trial court; (4) granted the Father's motion for referral to Family Court Services for the Child to begin individual therapy; and (5) denied the Mother's

3

emergency pick-up order.[1] In making its rulings, the trial court stated as follows:

> I do not want to reward in any way the mother's violation of law. On the other hand, I loathe to disrupt the child's life by taking him out of the school, the place where he has resided with the father's acquiescence, and bring him to Miami for an indefinite period of time when we don't know whether there is going to be a relocation hearing, whether there's going to be an agreement reached, et cetera.

The trial court specifically found that it was permitting the child to go back to Orlando with the Mother "solely" because it was "the least disruptive means of dealing with the child at this time and is in the best interest of the child." The trial court further stated: "I am specifically finding that this is not an oral granting [of] a temporary relocation." Prior to the completion of the hearing, the trial court obtained a commitment from the Mother's counsel that the Mother would be filing a petition to relocate under section 61.13001 as soon as possible to bring this matter to a final resolution. On December 1, 2017, the trial court entered a written order consistent with its oral pronouncements, which states, in part: "This order shall not be construed as an order retroactively granting temporary relocation of the child, as no such petition or motion has ever been filed."[2]

Two weeks after the hearing, the Mother, as promised, filed a petition to

---

[1] At the hearing, the Child's medical and school records were introduced. The medical records do not reflect any concerns regarding the Child, and the school records reflect that the Child is performing well in school.

[2] The written order does not refer to the Mother's oral commitment to file a petition to relocate.

relocate under section 61.13001. Thereafter, the Father timely appealed the December 1, 2017 order.

The Father contends that the trial court's decision to allow the Child to remain with the Mother in Orlando pending final disposition amounts to a "temporary relocation" of the Child under section 61.13001(6)(b), and that the trial court erred by granting the "temporary relocation" because a "temporary relocation" cannot be granted unless a petition to relocate has been filed.[3] We disagree.

As stated above, the Mother relocated with the Child without a written agreement of the parties or court approval, as required by sections 61.13001(2) and (3). Section 61.13001(3)(e) sets forth the consequences for relocating a child without complying with the statutory relocation procedures.[4] Section

---

[3] Although the Mother filed a petition to relocate two weeks later, at the time of the hearing, there was no pending petition to relocate.

[4] Section 61.13001(3)(e) provides:
> Relocating the child without complying with the requirements of this subsection subjects the party in violation to contempt and other proceedings to compel the return of the child and may be taken into account by the court in any initial or postjudgment action seeking a determination or modification of the parenting plan or the access or time-sharing schedule as:
> 1. A factor in making a determination regarding the relocation of a child.
> 2. A factor in determining whether the parenting plan or the access or time-sharing schedule should be modified.
> 3. A basis for ordering the temporary or permanent return of the child.
> 4. Sufficient cause to order the parent or other person seeking to

5

61.13001(3)(e) provides that the failure to comply with the statutory relocation procedures subjects the violating party to either (1) contempt proceedings, or (2) other proceedings to compel the return of the child. Although section 61.13001(3)(e) provides that the violating party is subject to these proceedings, the statute does not mandate a specific result. Thus, the trial court's determinations as to whether the violating parent should be held in contempt or whether to compel the return of the child are discretionary.[5]

Section 61.13001(6)(a) also addresses the relocation of a child without a written agreement of the parties or court approval. Specifically, a court is authorized, but not required, to enter a temporary order requiring "the return of the child, if a relocation has previously taken place." § 61.13001(6)(a) (providing that "[t]he court may . . . order the return of the child, if a relocation has previously taken place") (emphasis added). Further, section 61.13001(6)(a)2. authorizes a court to

---

relocate the child to pay reasonable expenses and attorney's fees incurred by the party objecting to the relocation.

5. Sufficient cause for the award of reasonable attorney's fees and costs, including interim travel expenses incident to access or time-sharing or securing the return of the child.

[5] In addition to being subject to "contempt and other proceedings to compel the return of the child," section 61.13001(3)(e) also provides that the fact that a parent relocated without complying with the relocation procedures "may be taken into account by the court in any initial or postjudgment action seeking a determination or modification of the parenting plan or access or time-sharing schedule[.]" (emphasis added).

"order <u>other appropriate remedial relief</u>, if the court finds: . . . 2. That the child has been relocated without a written agreement of the parties or without court approval[.]" (emphasis added).

In the instant case, as stated earlier, the trial court denied the Father's motion for physical custody of the Child and motion to suspend the Mother's time-sharing, but granted the Father's motion to appoint a guardian ad litem and motion for referral to Family Court Services. During the hearing, the trial court stated that it would allow the Child to remain with the Mother in Orlando because it did not want to disrupt the Child's schooling and it was "the least disruptive means of dealing with the child at this time and is in the best interest of the child." The trial court's order further states: "This order shall not be construed as an order retroactively granting temporary relocation of the child, as no such petition or motion has ever been filed." Thus, based on the trial court's statements and the order under review, it appears that the trial court was attempting to fashion "other appropriate remedial relief" as permitted by section 61.13001(6)(a)2., and was not granting a temporary relocation under section 61.13001(6)(b).

Section 61.13001(6)(b) provides that a trial court is permitted to grant a "temporary order permitting the relocation pending final hearing" **if** the trial court finds that the relocating parent has filed a proper petition to relocate under section 61.13001(3) **and**, following an evidentiary hearing, the trial court finds that there is

7

a "likelihood that on final hearing" it "will approve the relocation of the child[.]" Although the Father is correct that a trial court cannot grant a "temporary relocation" under section 61.13001(6)(b) unless a petition to relocate has been filed, it appears that the trial court recognized this—"This order shall not be construed as an order retroactively granting temporary relocation of the child, as no such petition or motion has ever been filed"—and instead may have been attempting to fashion "other appropriate remedial relief" under section 61.13001(6)(a)2. Prior to the conclusion of the hearing, the trial court recognized that removing the Child from his school in Orlando would be disruptive; obtained a commitment from the Mother that she would file a petition to relocate; acknowledged that the appointment of a guardian ad litem was necessary to investigate the allegations in the Father's emergency motion; and in the interim, referred the Child to Family Court Services for individual therapy.

In support of his argument, the Father cites to cases for the proposition that a trial court cannot grant a "temporary relocation" unless the relocating parent has first filed a proper petition to relocate under section 61.13001(3). However, those cases are distinguishable because the "temporary relocation" was pursuant to section 61.13001(6)(b). For example, in <u>Raulerson v. Wright</u>, 60 So. 3d 487 (Fla. 1st DCA 2011), the mother verbally notified the father of her intent to relocate with the child. In response, the father filed an emergency motion to enjoin the relocation.

8

Raulerson, 60 So. 3d at 488. A few days later, the mother hand-delivered to the father an unsworn "Notice of Intent to Relocate With Child," but did not file the notice with the court. Id. The following day, the mother and child relocated. Id. On the same day of the relocation, the father served a notice of hearing on the mother noticing the father's emergency motion to enjoin. Id. Prior to the scheduled hearing, the father filed a motion for contempt and a motion for return of child to the father. Id. However, the motion for contempt and motion for return of child were not noticed for hearing. Id.

At the scheduled hearing, the parties limited their testimony to the father's motion to enjoin and did not address whether relocation would be in the best interest of the child. Id. However, at the hearing, the mother verbally requested permission to relocate. In response, the father argued that the granting of a temporary relocation would be improper because the mother had not complied with the requirements of section 61.13001. Id. The trial court granted the mother's oral request to temporarily relocate, stating that the mother had "substantially complied" with the requirements of section 61.13001, and there was a likelihood that the relocation of the mother and the child would be granted at the final hearing. Id. at 488-89. The father's appeal followed.

The First District addressed whether the trial court properly granted the mother's oral motion to relocate under section 61.13001(6)(b), which provides as

9

follows:

> **(6) Temporary order.—**
> . . . .
> (b) The court may grant a temporary order permitting the relocation of the child pending final hearing, if the court finds:
> 1. That the petition to relocate was properly filed and is otherwise in compliance with subsection (3); and
> 2. From an examination of the evidence presented at the preliminary hearing, that there is a likelihood that on final hearing the court will approve the relocation of the child, which findings must be supported by the same factual basis as would be necessary to support approving the relocation in a final judgment.

The First District reversed the portion of the order granting the mother's oral motion to relocate, concluding as follows:

> The [m]other's efforts in this case were inadequate because she failed to comply with the threshold requirement of properly filing a sworn petition [to relocate] with the trial court. See § 61.13001(6)(b)1. Rather, she merely hand-delivered to the [f]ather an unsworn "Notice of Intent to Relocate With Child" one day before relocating. The [m]other did not file any form of documentation with the court, despite the statute's explicit directive to file a sworn petition. Thus, she failed to comply with the statute and should not have been granted permission to relocate.

Raulerson, 60 So. 3d at 490.

Raulerson is distinguishable from the instant case. In the instant case, it appears that the trial court's decision to allow the Child to remain with the Mother was not pursuant to section 61.13001(6)(b). First, the Mother did not request that the trial court grant a temporary motion to relocate under section 61.13001(6)(b). Second, the trial court recognized that it could not grant a temporary relocation under

10

section 61.13001(6)(b) because the Mother had not filed a petition to relocate—"This order shall not be construed as an order retroactively granting temporary relocation of the child, as no such petition or motion has ever been filed."

In the instant case, it appears that the trial court was traveling under section 61.13001(6)(a)2., which provides, in part, as follows: "(6) The court may . . . order other appropriate remedial relief, if the court finds: 2. That the child has been relocated without a written agreement of the parties or without court approval[.]" Thus, the Father's reliance on Raulerson is misplaced.

In conclusion, sections 61.13001(3)(e) does not mandate that a child must be returned to the non-violating parent when the other parent relocates without following the requirements of section 61.13001. Thus, the trial court has certain discretion in fashioning appropriate relief in such situations. In the instant case, the trial court did not abuse its discretion in denying the Father's emergency motion to for physical custody of the Child and to suspend the Mother's time-sharing. The trial court recognized that (1) the Child relocated with the Father's acquiescence two years earlier; (2) requiring the Child to return to Miami would disrupt his schooling; and (3) appointing a guardian ad litem was necessary to address the allegations in the Father's emergency petition. Further, although the allegations in the Father's emergency petition are serious, the trial court had before it the Child's medical records, which gave no indication that the Child was malnourished, and the Child's

11

school records, which indicates that he was doing well in school at the time of the hearing. Finally, prior to the conclusion of the hearing, the trial court obtained a commitment from the Mother that she would file a proper petition to relocate under section 61.13001(3).[6] Accordingly, we affirm the non-final order under review.

Affirmed.

---

[6] The record before this Court indicates that the Mother filed her petition to relocate prior to the Father filing his notice of appeal. Had the Father not appealed, the trial court by now would have most likely made a final determination as to the Mother's petition to relocate.